1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   TIMMERMAN STARLITE TRUCKING,          No.  2:19-cv-01876-JAM-AC
     INC.,
12
                         Plaintiff,
13                                          ORDER
              v.
14
     INGREDION INCORPORATED,
15
                         Defendant.
16

17

18          This matter is before the court on plaintiff's motion for discovery.  ECF No. 22.   The

19   parties submitted the required joint statement.  ECF No. 27.  The matter was submitted on the

20   papers.  ECF Nos. 23, 26.  Based on a review of the parties' arguments and the record as a whole,

21   the motion to compel is GRANTED.  Defendant is ORDERED to turn over all responsive

22   documents within ten (10) days of this order.  Because plaintiff brought a meritorious motion to

23   compel, the court GRANTS its request for attorney's fees, though in a reduced amount to comply

24   with the standard rates of this district.  The court awards plaintiffs' attorney's fees in the amount

25   of $6,679, to be paid within 10 days of this order.

26                     I.      Introduction and Relevant Background

27          Plaintiff Timmerman Starlite Trucking, Inc. ("Starlite") is a California corporation that

28   specializes in transportation of goods and bulk ingredients through a full-service freight line.

                                              1

Ingredion Incorporated ("Ingredion") is a Delaware corporation that manufactures ingredient solutions.  This action involves two agreements between Starlite and Ingredion regarding transportation and related services at Ingredion's corn wet milling plant in Stockton, California ("Stockton Plant").  On or about January 1, 2017, the parties entered two written contracts.  The first, the Ingredient Shuttle Agreement ("Shuttle Agreement"), provides that Starlite shall be the exclusive provider of certain transportation and handling services for Ingredion's wet corn gluten feed at its Stockton Plant.  The second, the Truck Transportation and Brokerage Agreement ("Master Carrier Agreement"), required Starlite to provide transportation and brokerage services to Ingredion for its Buffalo Wet Corn Feed at its Stockton Plant.

The Shuttle Agreement and Master Carrier Agreement (collectively, the "contracts") each contained a five-year term from January 1, 2017, to December 31, 2021.  A little over a year into the five-year contract term, Ingredion informed Starlite that it intended to cease all manufacturing operations at its Stockton Plant, and did so in November 2018.  As a result, Ingredion ceased performance under the Shuttle Agreement and the Master Carrier Agreement.  Ingredion filed a complaint asserting one claim for declaratory relief regarding its termination of the Shuttle Agreement, Case No. 2:19-cv-01167 JAM AC ("Ingredion action").  In its complaint, Ingredion alleges that it terminated the Shuttle Agreement for "economic reasons."  (Ingredion action, Dock. No. 1, at pp. 1, ¶¶ 9, 17.)  Additionally, Ingredion contends that its termination of the Shuttle Agreement was proper due to these economic conditions and pursuant to the force majeure clause in that contract.  Based on these allegations, Ingredion seeks a judicial declaration that its termination of the Shuttle Agreement was not a breach.  (Id. at pp 6.)

Starlite filed its own complaint against Ingredion in state court, which Ingredion removed to this Court, Case No. 2:19-cv-01876-JAM-AC ("Starlite action").[1]  The cases were combined for the purposes of discovery and trial on December 2, 2019.  ECF No. 13.  On January 31, 2020, Starlite sought leave to amend its complaint, which the court granted.  ECF No. 17.  In its amended pleading, Starlite asserts claims for breach of the Shuttle Agreement and breach of the

---

[1]  ECF reference numbers herein apply to the Starlite action unless otherwise noted.

Master Carrier Agreement.  In its Answer, Ingredion denies breaching these two agreements and assert forty (40) affirmative defenses to these claims.  ECF No. 18.  Many of these affirmative defenses – such as force majeure, impracticability, impossibility, failure of conditions precedent, frustration of purpose, and obligations not contemplated by contract – are tethered to the alleged "economic conditions" that caused Ingredion to close its Stockton Plant.  For example, in support of its Seventeenth Affirmative Defense, Ingredion alleges: "Starlite is attempting to impose on Ingredion obligations not contemplated by the contract, insofar as the contract does not require Ingredion to continue paying Starlite after the closure of the Plant."  Id. at ¶ 17.  As another example, Ingredion's Twenty-First Affirmative Defense asserts: "Starlite's First Amended Complaint, and each cause of action alleged therein, is barred in whole or in part because the closure of the plant and/or the closure of Ingredion's business excused performance pursuant to the contract's force majeure clause."  Id. at ¶ 21.

## II.     Motion

On June 2, 2020, Starlite served Requests for Production of Documents, Set One, on Ingredion.  Decl. of M. Baker in Support of Starlite's Motion to Compel ("Baker Decl."), ¶ 2. The parties have engaged in extensive meet and confer efforts.  ECF No. 27 at 6-9.  Though the parties were able to resolve some conflicts, they remain unable to agree as to several requests for production involving disclosure of Ingredion's financial information.  The RFPs at issue, divided by category, are:

Reasons for Stockton Plant Closure:

>Request No. 6: ALL COMMUNICATIONS discussing or referencing the reason(s) for the closure of YOUR STOCKTON PLANT.

>Request No. 7: ALL DOCUMENTS discussing or referencing the reason(s) for the closure of YOUR STOCKTON PLANT.

Financial Documents for Stockton Plant:

>Requests No. 8: Financial statements for YOUR STOCKTON PLANT for the years 2016 to 2019.

>Request No. 10: Balance sheets for YOUR STOCKTON PLANT the years 2016 to 2019.

1

   Request No. 12: Profit and loss statements for YOUR STOCKTON
   PLANT for the years 2016 to 2019.

2

Ingredion's Financial Statements:

3

   Request Nos. 9: YOUR annual financial statements for the years
   2016 to the present.

4

5

   Request No. 11: YOUR annual balance sheets for the years 2016 to
   the present.

6

7

   Request No. 13: YOUR annual profit and loss statements for the
   years 2016 to the present.

8

Financial Forecasts or Projections for the Stockton Plant:

9

   Requests No. 14: Any financial forecasts or financial projections for
   YOUR STOCKTON PLANT prepared during the years 2015 to the
   present

10

11

   Request No. 15: Any financial forecasts or financial projections for
   YOUR STOCKTON PLANT discussing the years 2017, 2018, 2019,
   2020 and/or 2021.

12

13

ECF No 27 at 9-25.

14

      Plaintiff filed the pending motion to compel on September 16, 2020.  ECF No. 22.  During

15

meet and confer, in an attempt to resolve the current discovery dispute, Ingredion's counsel

16

offered to waive its contention that the defenses of economic impossibility and impracticability

17

apply to the Shuttle Agreement and the Master Carrier Agreement.  Brown Dec. ¶ 4.  Ingredion's

18

counsel stated that, in doing so, Ingredion would narrow the dispute regarding the Shuttle

19

Agreement to the amount of damages Starlite has allegedly suffered as a result of the cancellation

20

of the Shuttle Agreement.

21

      Starlite's counsel rejected this offer.  Brown Dec. ¶ 5.  Counsel for Ingredion also stated it

22

will amend its answers to include Ingredion's admission that it breached the Shuttle Agreement.

23

ECF No. 27 at 8.  On Monday, September 28, 2020, Starlite responded to opposing counsel via

24

email explaining: "It is Starlite's position that Ingredion must also concede a breach of the Master

25

Carrier Agreement so as to avoid discovery into its finances and the reasons Ingredion closed its

26

Stockton Plant."  Baker Decl., ¶ 10, Ex. E.  Starlite and Ingredion participated in another meet

27

and confer conference call later that day to discuss this issue, during which Starlite explained its

28

position that the discovery at issue is relevant to its claim for breach of the Master Carrier

4

Agreement and why the admission/concession Ingredion had proposed regarding the Shuttle

Agreement did not "moot" the discovery at issue in this motion.  Id.

### III.    Analysis

A.  Motion to Compel Legal Standard

The scope of discovery under Federal Rule of Civil Procedure 26(b)(1) is broad.

Discovery may be obtained as to "any nonprivileged matter that is relevant to any party's claim or

defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  "Information within

this scope of discovery need not be admissible in evidence to be discoverable."  Id.  The court,

however, may limit discovery if it is "unreasonably cumulative or duplicative, or can be obtained

from some other source that is more convenient, less burdensome, or less expensive;" or if the

party who seeks discovery "has had ample opportunity to obtain the information by discovery;"

or if "the proposed discovery is outside the scope permitted by Rule 26(b)(1)."  Fed. R. Civ. P.

26(b)(2)(C).  The purpose of discovery is to "make a trial less a game of blind man's bluff and

more a fair contest with the basic issues and facts disclosed to the fullest practicable extent,"

United States v. Procter & Gamble Co., 356 U.S. 677, 682 (1958) (citation omitted), and "to

narrow and clarify the basic issues between the parties," Hickman v. Taylor, 329 U.S. 495, 501

(1947).

Under Federal Rule of Civil Procedure 37(a)(3)(B), a motion to compel may be made if "a

party fails to answer an interrogatory submitted under Rule 33; or a party fails to produce

documents or fails to respond that inspection will be permitted ... as requested under Rule 34."

The party seeking to compel discovery has the burden of showing that the discovery sought is

relevant or that its denial will cause substantial prejudice.  Aros v. Fansler, 548 F. App'x 500, 501

(9th Cir. 2013) (citing Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002)).  The opposing party

is "required to carry a heavy burden of showing why discovery was denied."  Blankenship v.

Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975).

B.  Attempt to Moot Discovery Dispute by Amendment/Concessions

Ingredion's primary argument as to each RFP is that it "offered to waive its defenses of

economic impossibility and impracticability.  Such waiver would make the issue of Ingredion's

1   economic condition and the reasons it closed the Stockton Plant irrelevant, and thus make

2   Starlite's Motion to Compel moot.  In light of Starlite's refusal to accept Ingredion's offer to seek

3   such a resolution by stipulation, Ingredion is currently exploring its options to amend both its

4   Complaint for Declaratory Relief and its Answer to Starlite's Complaint for Breach of Contract."

5   ECF No. 27 at 11.  Ingredion further contends this court should delay ruling on the motion due to

6   complications caused by COVID-19 and the October 1, 2020 closing of counsel's law firm and its

7   merger with another firm.  Id.

8        Ingredion's arguments are not persuasive.  First, as to timing, discovery in this matter

9   currently closes January 8, 2021.  ECF No. 21.  The COVID-19 crisis has been going on for over

10   seven months, and Ingredion does not provide any specific reason that COVID-19 should delay a

11   ruling on this motion.  Likewise, the fact of counsel's office merger does not convince the court a

12   ruling on this motion should be delayed.  Counsel presumably knew this merger would be

13   happening, and even if not, counsel provides no alternative timeline for the adjudication of this

14   motion.  Though the parties have apparently agreed to ask for an extension of discovery deadlines

15   and the trial date (ECF No. 27 at 9) there is no stipulation currently on file.  Even if there were,

16   discovery must continue at a reasonable pace and the court finds no just cause for delay in ruling

17   on the motion at bar.

18        As to the issue of mootness, it is clear from the briefing that an agreement has not been

19   reached and no amended answer has been filed to date.  The court must work with what is on the

20   record.  Further Starlite argues that even if Ingredion amends to concede a breach of the Shuttle

21   Agreement and eliminate its economic impossibility defenses, that amendment would not "moot"

22   the discovery sought via this motion because Ingredion would not be conceding breach of the

23   Master Carrier Agreement.  ECF No. 27 at 12-13.  While the parties forward competing

24   interpretations of the Master Carrier Agreement in order to convince the court that discovery

25   relevant to Ingredion's finances is or is not relevant, the undersigned agrees with Starlite that

26   "this discovery motion is neither the time nor the place to adjudicate the issue of competing

27   contract interpretations.  Starlite is entitled to discovery relevant to its claims, including its claim

28   for breach of the Master Carrier Agreement.  Ingredion is free to argue that its premature

1   termination of that Master Carrier Agreement does not constitute a breach, but Ingredion cannot

2   avoid discovery relevant to Starlite's allegation of breach on that basis." ECF No. 27 at 14.

3       C.  Relevance and Burden

4       Requests for production related to Ingredion's and the Stockton Plant's financials are

5   relevant and proportional for the purposes of discovery in this case.  Ingredion does not make a

6   serious argument to the contrary.  See ECF No. 27 at 11.  The scope of discovery in federal cases

7   is governed by Federal Rule of Civil Procedure 26(b)(1).  The Rule states:

8           Unless otherwise limited by court order, the scope of discovery is as
            follows: Parties may obtain discovery regarding any nonprivileged
9           matter that is relevant to any party's claim or defense and
            proportional to the needs of the case, considering the importance of
10          the issues at stake in the action, the amount in controversy, the
            parties' relative access to relevant information, the parties' resources,
11          the importance of the discovery in resolving the issues, and whether
            the burden or expense of the proposed discovery outweighs its likely
12          benefit. Information within this scope of discovery need not be
            admissible in evidence to be discoverable.
13

14  Fed. R. Civ. P. 26(b)(1).

15      Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it

16  would be without the evidence; and (b) the fact is of consequence in determining the action.  Fed.

17  R. Evid. 401.  Relevancy to the subject matter of the litigation "has been construed broadly to

18  encompass any matter that bears on, or that reasonably could lead to other matter that could bear

19  on, any issue that is or may be in the case."  Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340,

20  351 (1978).  Relevance, however, does not alone establish discoverability; in 2015, a

21  proportionality requirement was added to Rule 26.  Under the amended Rule 26, relevance alone

22  will not justify discovery; discovery must also be proportional to the needs of the case.

23      The reason(s) Ingredion decided to close its Stockton Plant are directly relevant to

24  Ingredion's contention that economic conditions excused its performance under its two contracts

25  with Starlite.  Starlite is entitled to the communications and documents regarding why the

26  Stockton Plant closed so that Starlite can ascertain whether the closure was justified by economic

27  conditions as Ingredion claims.  The reason(s) for closure of the Stockton Plant, and thus the

28  ////

1   associated financial status of Ingredion and the Stockton Plant, are relevant to the claims and
2   defenses involved in this case.

3        Though Ingredion raises proportionality in its responses to the RFPs, it does not expand
4   on the proportionality argument in the joint statement.  The RFPs do not appear to the court to be
5   inherently disproportionate to the needs of the case.  Neither relevance nor burden provide a basis
6   to withhold documents responsive to the RFPs at issue.

7        D.  Vagueness

8        Ingredion raises the issue of vagueness in its responses to the RFPs but does not expand
9   on the vagueness argument in the joint statement.  The court does not find any of the RFPs
10  inherently vague.  Thus, vagueness does not provide a valid reason to withhold responsive
11  documents to the RFPs at issue.

12       E.  Attorney's Fees and Costs

13       Because plaintiff's motion to compel is meritorious, an award of fees and costs is
14  appropriate pursuant to Federal Rule of Civil Procedure 37(a)(5)(A) and E.D. Cal. R. ("Local
15  Rule") 230.  The appropriate method for computing fees in this case is the lodestar approach, in
16  which the court multiplies the number of hours reasonably expended on the litigation by a
17  reasonable hourly rate.  Cunningham v. County of Los Angeles, 879 F.2d 481, 484 (9th Cir.
18  1988).  "The measure to be used 'is not actual expenses and fees but those the court determines to
19  be reasonable.'"  Matter of Yagman, 796 F.2d 1165, 1184–85 (9th Cir.1986).  The court has
20  already set the fee rate for this case at $350 per hour for attorneys and $75 per hour for paralegals,
21  and the court will not reconsider these rates.  ECF No. 312 at 7.  Only the hours billed and costs
22  claimed are disputed.

23       Plaintiff alleges that counsel spent a total of 11.6 senior attorney hours at the rate of
24  $410/hour and 9.7 junior attorney hours at the rate of $270/hour in preparation of their motion to
25  compel.  ECF No. 27-1 at 6-7.  Reducing the senior attorney's fees to the accepted rate, a total fee
26  award of $6,679 is appropriate here.

27  ////

28  ////

1

                    **IV.    Conclusion**

2          For the reasons explained above, it is hereby ordered that the motion to compel at ECF

3   No. 22 is GRANTED in full.  All responsive documents shall be produced within 10 days of this

4   order.  Attorney's fees in the amount of $6,679.00 shall be paid to plaintiff within 10 days of this

5   order.

6   DATED: October 21, 2020

7

8   ALLISON CLAIRE
    UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28